UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,                No. 07-CV-12552-DT

vs.                                      Hon. Gerald E. Rosen

PETER W. FISHER, DAVID B. STOCKER,
PHILLIP W. OFFILL, JR., and COLLECTIVE
THOUGHT HOLDINGS, INC.,

                Defendants.
_____/

OPINION AND ORDER DENYING DEFENDANT
PHILLIP W. OFFILL, JR.'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND
ALTERNATIVE MOTION TO TRANSFER VENUE

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    March 28, 2008

PRESENT:  Honorable Gerald E. Rosen
                  United States District Judge

I. INTRODUCTION

Defendant Phillip W. Offill, Jr., is one of five defendants named in this civil enforcement action brought by the Securities and Exchange Commission (the "SEC") alleging various violations of the antifraud and registration provisions of the federal securities laws. Offill has moved the Court to dismiss the Complaint against him for lack of personal jurisdiction, or, in the alternative, to transfer venue for *forum non*

1

*conveniens*. The SEC has responded to Defendant Offill's Motion and Offill has replied. Having reviewed and considered the parties' briefs and the entire record of this matter, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## I. PERTINENT FACTS

The SEC's Complaint in this action arises out of transactions involving the stock of AVL Global, Inc., a company purported to provide satellite tracking data for automobiles. AVL was incorporated in Nevada and, during the relevant time period, had its principal place of business in Port Huron, Michigan.

## THE PARTIES

Defendant N. Tyler Fisher, a Canadian citizen who resides in Ontario, Canada, was the president of AVL and served as the only member of the company's board of directors.[1] Defendant Peter Fisher is Tyler Fisher's father. Peter Fisher, served as a "consultant" to AVL during the relevant time period. Peter Fisher is also a Canadian citizen and he, too, resides in Ontario, Canada. Defendant David B. Stocker is an attorney in Phoenix, Arizona.

Defendant Phillip W. Offill, Jr., is an attorney in Dallas, Texas. Offill incorporated Defendant Collective Thought Holdings, Inc. in Texas on July 20, 2004.

---

[1] A Consent Judgment was entered against Tyler Fisher immediately after the SEC filed its Complaint in this matter.

Collective Thought's principal place of business is in Dallas, Texas, and Phillip Offill is the company's sole officer/director.

THE SEC'S ALLEGATIONS

According to the Complaint, AVL Global was never a very successful company. It attracted few customers and had little or no revenue. At its peak, the company had only three employees, including Tyler Fisher.

The SEC alleges that beginning in April 2004, the Defendants engaged in an illegal scheme for AVL Global to issue millions of shares in the company without complying with the registration and disclosure requirements of the federal securities laws. To effect the scheme, Peter and Tyler Fisher retained Defendant David Stocker to represent AVL Global. With Stocker's assistance, AVL Global illegally offered and sold shares of stock in three transactions in April, July and October 2004. In the July and October 2004 transactions, Stocker recruited the participation of Defendant Offill.

The SEC alleges that to assist the scheme to evade the registration requirements of the federal securities laws, Offill incorporated Defendant Collective Thought Holdings, Inc. Offill thereafter executed two subscription agreements to purchase shares of AVL Global, one in July and the other in October 2004. Offill signed these subscription agreements on behalf of Collective Thought in his representative capacity only, as "its attorney." Offill also signed promissory notes in conjunction with the subscription

agreements on behalf of Collective Thought Holdings in his representative capacity.[2] Offill. Offill subsequently gave David Stocker "stock powers" to transfer the AVL Global shares without Offill's further involvement.

The SEC alleges that Stocker thereafter used the stock powers to transfer the shares purchased by Collective Thought Holdings to individuals identified by Peter Fisher. (Peter Fisher included himself in this approved transferee list.) Peter Fisher later sold shares that he received at about the same time that he and Tyler Fisher were allegedly conducting a misleading campaign to promote the purchase of AVL Global stock.

The Commission alleges that all of the defendants, including Defendant Offill, violated the registration provisions of the Securities Act of 1933. In addition, the Commission alleges that Peter Fisher and Tyler Fisher violated the antifraud provisions of the Securities Exchange Act of 1934.

ADDITIONAL PERTINENT FACTS

The SEC took sworn testimony from Offill during the investigation that preceded the filing of this lawsuit. In addition to acknowledging that he incorporated Collective Thought Holdings, Inc, that he was the company's sole officer and director, and that he executed two subscription agreements and promissory notes to purchase shares of AVL

---

[2] In the signature space on these notes the company name, "Collective Thought Holdings, Inc." was typed and immediately below the typed company name was a blank "by" line on which Offill signed his name.

Global on behalf of Collective Thought, Offill also testified that Collective Thought had no funds to pay for stock it subscribed to:

> Q: . . . [H]ow did Collective Thought Holdings intend to pay for the shares it subscribed to?
>
> A: I would have put cash into the company and paid for the shares.
>
> Q: To cover the note?
>
> A: Sure.
>
> Q. And the money would have come from you personally through Collective Thought Holdings?
>
> A: Yes, that's correct.
>
> Q: At the time that you signed the note, Mr. Offill, did Collective Thought Holdings actually have any funds in its account to pay for the shares it was subscribing to?
>
> A: No, I don't think it did, but I had the capability of covering Collective Thought Holdings' obligations.

[Plaintiff's Ex. F, p. 94.]

Offill now moves to dismiss the SEC's Complaint against him for lack of personal jurisdiction claiming that the Commission has not established a constitutionally sufficient basis for the exercise of personal jurisdiction under the "minimum contacts" doctrine.

## III. DISCUSSION

### A. STANDARDS APPLICABLE TO MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

When a defendant files a motion to dismiss for lack of personal jurisdiction, the

plaintiff has the burden of establishing jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). However, when the court does not conduct an evidentiary hearing on the issue of personal jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." *Id.,* quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). The court must then consider the pleadings and documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005).

In the Sixth Circuit, "[w]here a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir.2002) (citations omitted).

B.  MICHIGAN'S "LONG-ARM" STATUTE

Michigan's "long-arm" statute extends "limited" jurisdiction over nonresident individuals pursuant to M.C.L. § 600.705. M.C.L. § 600.705(1) provides for limited jurisdiction when an defendant engages in "the transaction of any business within the state." When construing identical language in M.C.L. § 600.715(1) -- the companion long-arm statute applicable to non-resident corporations -- the Michigan Supreme Court stated that "the word 'any' means just what it says. It includes 'each' and 'every'. . . . It

comprehends the 'slightest'" business transaction. *See Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 905-06 (6th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988) (quoting *Sifers v. Horen*, 385 Mich. 195, 199 n. 2 (1971)). This interpretation applies with "equal force to section 705." *Theunissen v, Matthews*, 935 F.2d 1454, 1464 (6th Cir. 1991); *see also Flint Ink Corp. v. Brower*, 845 F. Supp. 404, 408 (E.D. Mich. 1994); *Fisher v. Blackmore*, 325 F. Supp. 2d 810, 814 (E.D. Mich. 2004).

In this case, Defendant Offill engaged in the transaction of business in Michigan when he executed stock subscription agreements for the purchase of shares of stock of AVL Global, a Michigan company. The fact that Offill signed these agreements in his representative capacity as president or attorney for Collective Thought Holdings does not alter this conclusion.

While some courts adhere to the "fiduciary shield doctrine" and hold that if an individual has contact with a particular state only by virtue of his acts as a fiduciary of a corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct, *see e.g., Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2nd Cir. 1981), the Sixth Circuit has rejected such a broad application of the doctrine. *See Balance Dynamics Corp. v. Schmitt Industries, Inc.*, 204 F.3d 683, 697-98 (6th Cir. 2000). The rule instead in this Circuit is that while "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation, . . . where an out-of-state agent is actively and personally involved in the

conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.,* whether []he purposefully availed [him]self of the forum and the reasonable foreseeable consequences of that availment." *Id.* at 698 (citations omitted). Michigan state courts have likewise rejected applicability of the fiduciary shield doctrine. *See W.H. Froh, Inc. v. Domanski*, 252 Mich. App. 220, 651 N.W.2d 470 (2002) (holding "the fiduciary shield doctrine does not constitute a valid argument against a Michigan court's exercise of personal jurisdiction over a nonresident individual defendant who otherwise falls within the scope of Michigan's long-arm statute." 252 Mich. App. at 238, 651 N.W.2d at 482.)

C.  DUE PROCESS

In order to satisfy the requirements of due process, a defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts exist when "then defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp, v. Woodson*, 444 U.S. 286, 297 (1980). Further, it is necessary that the defendant "purposefully avail himself of the privilege of conducting activities within the form state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

8

A court may exercise either "general" or "specific" jurisdiction over a non-resident defendant. *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). General jurisdiction exists when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.* (citing *Third Nat'l Bank of Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). Plaintiff does not contend that a finding of general jurisdiction is proper in this case. Plaintiff does assert, however, that "specific" jurisdiction exists over Defendant Offill. Exercising specific personal jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the state. *Intera v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005).

The Sixth Circuit has utilized a three-part test in addressing the due process requirements for specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Intera, supra* (quoting *Southern Machine Company v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

1. Purposeful Availment

    The first step of the *Intera/Mohasco* test requires that a defendant reach beyond

9

his own state and purposefully avail himself of the privilege of "exploiting the other state's business opportunities." *W.H. Froh, Inc. v. Thomas Domanski, supra*, 252 Mich. App. at 230. "Purposeful availment" is the "constitutional touchstone" of personal jurisdiction. *Neogen, supra*, 282 F.3d at 889. As the Sixth Circuit explained in *Third National Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087 (6th Cir. 1989),

> The "purposeful availment" requirement
>
> > ensures that a defendant will not be haled into a jurisdiction as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State.

882 F.2d at 1090 quoting *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183-84 (internal citations and footnotes omitted).

In assessing a defendant's contacts with the forum state, "'[i]t is the 'quality' of [the] contacts,' and not their number or status, that determines whether they amount to purposeful availment." *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1119 (6th Cir.), *cert. denied*, 513 U.S. 962 (1994) (quoting *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1301 (6th Cir.1989), *cert. denied*, 494 U.S. 1056 (1990)). Indeed, consciously seeking a single contract with a resident of the forum state can constitute "purposeful availment." *See McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957) (finding that due process did not prohibit California from asserting jurisdiction over a Texas insurance company based upon the issuance of a single

insurance contract where the insurance company had consciously sought the contract with the California insured); *see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) (finding sufficient basis for exercising personal jurisdiction in Ohio over a Texas resident who consciously reached out from Texas to Ohio to enter into a single subscription agreement for CompuServe's services).

In this case, Defendant Offill's contacts with AVL Global were not "random," "fortuitous," or "attenuated." Nor were the contacts the result of the "unilateral activity" of AVL, Fisher or some other third party. Rather, the contacts were the result of actions taken by Offill himself.

Offill personally reached out to AVL Global, a Michigan-based company, to purchase stock in the company. He personally executed the AVL stock subscription agreements on behalf of his company, Collective Thought Holding, Inc. Offill testified that the purpose of Collective Thought Holding was to purchase securities and to hold them for resale for profit. He further testified that in deciding to purchase stock in AVL, he reviewed the company's business plan and its trading history. Thus, his contacts with the Michigan resident, AVL, were certainly not "random" or "fortuitous." Rather, they were the result of Offill's conscious actions directed at the company in Michigan. These contacts, therefore, satisfy the "purposeful availment" requirement.

2. <u>Arising From Defendant's Activities</u>

Under the second prong of the *Mohasco* test, the cause of action must arise from

11

the defendant's activities within the forum state. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Bird v. Parsons*, 289 F.3d at 875 (quoting *Compuserve, Inc. v. Patterson, supra*, 89 F.3d at 1267). The Sixth Circuit has characterized this as a "lenient standard" and has noted that causes of action need not "formally" arise from the defendant's contacts. *Air Products and Controls, Inc. v. Safetech Intern., Inc.,* 503 F.3d 533, 553 (6th Cir. 2007) (quoting *Bird v. Parsons*, *supra*).

Again, construing the facts in a light most favorable to the Plaintiff, this test is satisfied here. Offill's purchase of the AVL Global stock was part of the scheme to avoid the registration requirements of the securities laws alleged in the SEC's Complaint. Indeed, it might be said that Offill's actions made the scheme possible. *See In Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 232 (6th Cir. 1972) (finding the Ohio plaintiff's cause of action for breach of contract and business disparagement arose out of Minnesota defendant's contacts with Ohio where defendant's stop payment order on the check it sent to plaintiff made possible both the plaintiff's claims as well as their consequences).

3.     Substantial Connection

The final *Mohasco* factor a court must consider is whether the defendant's activities are so substantially connected with Michigan that the exercise of personal jurisdiction over the defendant is reasonable. *Starbrite Distributing, Inc. v. Excelda*

*Manufacturing Company*, 454 Mich. 302, 312-13, 562 N.W.2d 640 (1997). The Sixth Circuit has held that an inference arises that the third prong of the *Mohasco* test is satisfied if the first and second prongs are met. *Theunissen v. Matthews*, 935 F.2d at 1461. To overcome this inference, the defendant must present a "compelling case that the presence of some other considerations render personal jurisdiction unreasonable." *Starbrite*, 454 Mich at 313 (quoting *Burger King*, 471 U.S. at 477). The Court then must balance the "burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief." *Theunissen*, 935 F.2d at 1462 (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 133 (1987)).

All that Defendant Offill offers to support a claim of unreasonableness is that he lives and works in Texas. However, the Sixth Circuit has routinely upheld specific jurisdiction in cases where the non-resident defendant is forced to travel to the forum state. *See, e.g., Lanier, supra*, 843 F.2d at 911-12. The Court finds that the burden on Defendant Offill does not outweigh the interests of the Plaintiff in litigating this case in Michigan. As indicated, the fraudulent activities here center around AVL Global, a company based in Michigan. The principal players in the alleged fraud -- Peter and Tyler Fisher -- worked in Michigan at the time. Further, Michigan has an interest in insuring businesses in the state are operated according to the law. Accordingly, the Court finds that Defendant has not presented a case that is compelling enough to overcome the inference that the third prong of the *Mohasco* test is satisfied.

In sum, the Court finds that the SEC has presented a *prima facie* case showing that the Michigan long-arm statute applies to Defendant Offill and that exercising personal jurisdiction over him does not violate Due Process.

D.   DEFENDANT HAS NOT DEMONSTRATED A SUFFICIENT BASIS
     FOR TRANSFER OF VENUE

In the alternative, Defendant Offill moves this Court to order that venue be transferred to a United States District Court in Texas or Arizona on *forum non conveniens* grounds under 28 U.S.C. §1404. Defendant argues that Michigan is not a convenient forum for him and he merely conclusorily posits, with no evidentiary support whatsoever, that "none of the [other] parties are here nor, apparently, are any of the witnesses or other evidence necessary for trial" of this suit.

The framework for examining requests to transfer is guided by the public and private interests at stake. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Factors that are relevant to the court's consideration of transferring venue are:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Helder v. Hitachi Power Tools, USA Ltd.*, 764 F. Supp. 93, 96 (E.D. Mich. 1991). The moving party bears the burden of "demonstrating that, in light of these factors, fairness and practicality strongly favor the forum to which the transfer is sought." *Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001).

In weighing these factors, one of the considerations to be taken into account is the "strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public factors clearly point towards trial in the alternative forum." *Piper Aircraft, supra*, 454 U.S. at 255; *Bennett v. America Online, Inc.*, 471 F. Supp. 2d 814, 819-20 (E.D. Mich. 2007). In this case, the "strong presumption" is buttressed by the statutory venue provisions contained in the Securities Act and the Exchange Act, 15 U.S.C. § 77v(a) and 15 U.S.C. § 78aa, which permit actions where any offer or sale of securities, or any act or transaction constituting the violation, occurred. *See also Thayer/Patricof Educ. Funding LLC v. Pryor Resources, Inc.*, 196 F. Supp. 2d 21, 35 n.9 (D.D.C. 2002) (citing *SEC v. Elec. Warehouse, Inc.*, 689 F. Supp. 53, 74 (D. Conn. 1988)). This Court will give weight to Plaintiff's proper venue choice unless there is sufficient reason to change venue. "Merely shifting the burden from one party to another is impermissible." *Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp.2d 834, 837 (E.D. Mich. 2000) (citing *Evans Tempcon, Inc. v. Index Industries, Inc.*, 778 F. Supp. 371, 377 (W.D. Mich. 1990)).

The second factor the Court considers is the convenience of the witnesses. This factor does not favor either party. Neither party listed any specific witnesses necessary for trial that would be inconvenienced in this forum. Thus, there is not sufficient evidence that either party would be more inconvenienced in the production of witnesses. In addition, Defendant has not presented any argument or evidence suggesting that there are any witnesses unwilling to testify who could not be compelled to testify if venue

remained in this district. Thus, this factor does not tip the scales in either party's favor.

Defendant also has not made any argument concerning the availability of documentary evidence in this or any other forum. In any event, the movement of documentation is fairly easy and inexpensive, resulting in a small burden, if any, on Defendant. *See Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 837 (E.D. Mich. 2000). Thus, this factor does not weigh heavily in favor of transferring venue either.

Finally, the Court considers whether a transfer of venue is necessary in the interest of justice. Defendant offers no argument or evidence to support why the interest of justice would require a transfer of venue. Plaintiff gives several reasons why the case should stay in this district: (1) the transactions that constitute the securities law violations occurred in this district; (2) at the time that AVL Global sold the shares at issue, it was based within the district; and (3) the two principals behind AVL Global -- Tyler and Peter Fisher -- live within 15 miles of the district, in or near Sarnia, Ontario.

Indeed, the public interest is best served by allowing the SEC to pursue claims of manipulation of a company's stock where the company resided. Furthermore, Offill's argument for transfer based on his convenience fails to take into consideration whether the Fishers would be amenable to service of process in either Arizona or Texas.

In sum, Offill has offered no substantive reasons of "fairness and practicality." Moreover, to the extent that Offill moves to transfer only the "claims against him," one of the factors for consideration when deciding a motion to transfer is judicial efficiency. *See*

*Bennett v. America Online, supra*, 471 F Supp. 2d at 820.  The severing of claims against Offill would effectively result in duplicative proceedings.

The interest of justice, therefore, does not suggest that this Court should transfer venue.  As indicated above, the defendant bears the burden of proof to show that the court should transfer venue to another district.  *IFL Group, Inc. v. World Wide Flight Services, Inc.,* 306 F. Supp. 2d 709. 711 (E.D. Mich. 2004).  Considering all of the factors relevant to transferring venue, this Court finds that Defendant Offill has not met his burden.  While venue may have been proper in Texas or Arizona had the case been filed there, there are not sufficient reasons to transfer venue from this district.  Merely shifting the inconvenience of trial in another state from the defendant to the plaintiff is not an adequate reason for transfer.  *Grand Kensington, LLC v. Burger King Corp.*, *supra* 81 F. Supp. 2d at 837.  Therefore, Defendant Offill's *forum non conveniens* motion to transfer venue will be denied.

## CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant Offill's Motion to Dismiss or Transfer **[Dkt. # 3]** is DENIED.


        s/Gerald E. Rosen
        Gerald E. Rosen
        United States District Judge

Dated: March 28, 2008

I hereby certify that a copy of the foregoing document was served upon Phillip Offill and counsel of record on March 28, 2008, by electronic and/or ordinary mail.

        s/LaShawn R. Saulsberry
        Case Manager